**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**CIVIL ACTION NO. 3:11-CV-658-H**

CHRISTOPHER A. HOLLOWAY                                           PLAINTIFF

V.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                      DEFENDANT

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION**

The plaintiff, Christopher A. Holloway, filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied his application for disability insurance benefits. At issue is whether the administrative law judge erred when he determined that Mr. Holloway retained the residual functional capacity to perform light work,  without referring to the existing medical opinion evidence in the record, or arranging for updated evidence.

After reviewing the parties' fact and law summaries (docket nos. 9 and 10) and the administrative record (docket no. 7), the magistrate judge concludes that the ALJ erred as a matter of law and recommends that the district court grant reverse the Commissioner's decision and remand this matter pursuant to 42 U.S.C. §405(g) for further proceedings consistent with this opinion.

# I.   BACKGROUND

## A.  Procedural History

Mr. Holloway filed an application for disability insurance benefits in July 2010 and alleged he became disabled in November 2004, due to bipolar disorder, back pain, left foot pain, and carpal tunnel syndrome.[1] After his application was denied by the state agency (both initially[2] and on reconsideration[3]), he requested a hearing with an administrative law judge (an "ALJ").

Mr. Holloway's request was granted and both he, and a vocational expert, testified at a hearing held on June 2, 2011.[4] One month later, the ALJ issued an opinion in which he determined that Mr. Holloway was not entitled to disability insurance benefits.[5] The Appeals Council affirmed this decision and Mr. Holloway then timely appealed to this court.

## B.  The Five-Step Evaluation Process

In reaching a determination regarding a claimant's disability, an ALJ is required to perform a five-step sequential evaluation process. If the ALJ is able to find that a claimant either is or is not disabled at a particular step, he must not go on to the next step.  The five steps are as follows:

(1) At the first step, the ALJ consider the claimant's work activity, if any. If the claimant is engaged in substantial gainful activity, he is not disabled.

(2) At the second step, the ALJ consider the medical severity of the claimant's impairments. If there exists no severe medically determinable physical or mental impairment (or combination of impairments) that meets the duration requirement, the claimant is not disabled.

(3) At the third step, the ALJ also considers the medical severity of the claimant's impairments. If the claimant has an impairment that meets or equals one listed in 20 C.F.R. Pt. 404, Subpt. P, App 1, and meets the duration requirement, the ALJ must find that the claimant is disabled.

---

[1] Admin. R. at 102-105, 144, 146.
[2] Admin. R. at 53-73.
[3] Admin. R. at 74-84.
[4] Admin. R. at 24-51.
[5] Admin. R. at 13-20.

Before the ALJ goes from step three to step four, he must assess the claimant's residual functional capacity, which the ALJ then must use at both step four and step five when evaluating the claimant's alleged disability.

> (4) At the fourth step, the ALJ must consider his assessment of the claimant's residual functional capacity and his past relevant work. If the claimant can still do his past relevant work, the ALJ must find that he is not disabled.

> (5) At the fifth and last step, the ALJ must consider his assessment of the claimant's residual functional capacity and his age, education, and work experience to see if the claimant can make an adjustment to other work. A claimant who can make an adjustment to other work is not disabled, but one who cannot is disabled.

*See* 20 C.F.R. § 404.1520(a)(4).

## II. FINDINGS OF FACT

Mr. Holloway claims that he is disabled because he suffers from bipolar disorder, carpal tunnel syndrome, back pain and left foot pain.[6] Records of the state agency's initial determination, and its subsequent reconsideration, indicate that the agency considered Mr. Holloway to have two medically determinable impairments: a degenerative and discogenic back disorder, which it deemed severe, and an affective disorder, which it deemed non-severe.[7]

The state agency determined that consultative examinations regarding both of Mr. Holloway's impairments were necessary for a proper evaluation of his claim[8] and, accordingly, asked Jane Brake, Ph.D., and P. Saranga, M.D. to review Mr. Holloway's treatment records and submit their opinions regarding any impact Mr. Holloway's mental and physical condition might have on his ability to work.[9]

Dr. Brake found Mr. Holloway's stated symptoms of mental impairment to be partially credible, but ultimately concluded that his bi-polar disorder "did not significantly impact on the

---

[6] Admin. R. at 31-33, 144, 146.
[7] Admin. R. at 56, 66, 77.
[8] Admin. R. at 55, 65.
[9] Admin. R. at 56-60, 66-70.

claimant's ability to perform basic work-related functions."[10]  Dr. Saranga evaluated the records of Mr. Holloway's back pain, obesity and carpal tunnel syndrome, and determined that he could work, but had some exertional limitations[11] due to his obesity, back pain, and carpal tunnel syndrome, and some non-exertional limitations,[12] specifically:  postural limitations due to his back pain and obesity, (3) manipulative limitations due to carpal tunnel syndrome affecting his right hand, and (4) environmental limitations requiring him to avoid concentrate exposure to vibrations.[13]  Based in part on these opinions, the agency denied Mr. Holloway's request for benefits.

Mr. Holloway promptly requested that the agency reconsider its decision, and when it did it once again deemed Mr. Holloway's back problem to be severe and all other conditions to be not severe.[14]  The agency also deemed it necessary to order consultative examinations regarding Mr. Holloway's mental and physical impairments.[15]  Although he reviewed the same records as Dr. Brake, the mental health reviewer hired on reconsideration, Dan Vandivier, Ph.D., stated he could not make an accurate assessment of Mr. Holloway's condition because there did not exist sufficient evidence in the record for him to do so.[16]  The medical doctor, Carlos Hernandez, however, reviewed the recently-submitted records of an MRI of Mr. Holloway's lumbar spine, in addition to the preexisting medical evidence in the record, and recommended the same exertional, postural, manipulative, and environmental limitations that Dr. Saranga did, and for the same stated reasons.[17]

---

[10] Admin. R. at 57.
[11] Exertional limitations are those that affect a claimant's ability to meet the strength demands of jobs (*e.g.,* sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. § 404.1569a(b).
[12] Nonexertional limitations are defined at 20 C.F.R. § 404.1569a(c), and include a variety of limitations other than strength demands, such as:  depression, difficulty concentrating, and difficulty understanding directions.
[13] Admin. R. at 68-70.
[14] Admin. R. at 77.
[15] Admin. R. at 77.
[16] Admin. R. at 77-78.
[17] Admin. R. at 77, 79-81. *Compare* Admin. R. at 68-70.

Although Mr. Holloway had an extensive treating relationship with Dr. David Berry at Physician's Primary Care in Jeffersonville, Indiana, Dr. Berry did not prepare any report regarding Mr. Holloway's functional limitations, and the ALJ did not ask for one.[18]  Nor was there any report prepared by any other examining medical doctor or any *examining* mental health professional.  But, all of the results of the state agency's consultative examinations were included among the evidence submitted to the ALJ for his review and evaluation.[19]  He referred to none of them at the hearing, made no mention of any of them in his decision, and instead stated in his opinion "[t]here is no opinion evidence to evaluate."[20]

In the ALJ's written opinion, the only medical or psychological evidence discussed was the testimony at the hearing, Mr. Holloway's treatment records, and Mr. Holloway's statements in his application documents.[21]  Based on that evidence, the ALJ determined that only Mr. Holloway's bi-polar disorder was a severe impairment, but that it did not meet or equal the requirements of Listing 12.04 (Affective Disorders).[22]

The ALJ then determined that Mr. Holloway retained the residual functional capacity to perform light work with some limitations related to his mental impairment.[23]  He did not deem Mr. Holloway's description of his physical functional limitations credible, but did not further analyze whether, and to what extent, Mr. Holloway's physical impairments (regardless of their severity) affected his residual functional capacity either generally, or with respect to specific exertional, postural, manipulative, or environmental limitations.[24] And, because the ALJ did not discuss any of the exertional and non-exertional limitations that had been recommended by the

---

[18] *See generally* Admin. R. at 213-365.
[19] Admin. R. at 21.
[20] Admin. R. at 18.
[21] *See generally* Admin. R. at 15-18.
[22] Admin. R. at 15-17.
[23] Admin. R. at 17-18.
[24] Admin. R. at 17-18.

state agency consultative medical and psychological examiners, he did not explain his reasons for rejecting them.

### III. STANDARDS OF REVIEW

Although a district court may not try a Social Security appeal *de novo*, it need not affirm the conclusions of the Commissioner of Social Security if an administrative law judge failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008).

Mr. Holloway asserts that the ALJ's ultimate decision that he was not disabled and capable of performing certain types of work was not supported by substantial evidence in the record because he did not evaluate or discuss the full nature and extent of Mr. Holloway's alleged impairments, did not fully develop the record with respect to medical evidence, and failed to deem Mr. Holloway's testimony regarding his limitations credible.

### III. CONCLUSIONS OF LAW

The magistrate Judge concludes that the ALJ erred as a matter of law with respect to his evaluation of the medical evidence and opinions in the record.

#### A.  The ALJ's Failure to Evaluate and Explain his Reasons for Rejecting the Opinions of the Consultative Examiners

This case examines the interrelationship of the claimant's burden of proof through step four of the sequential evaluation process and the ALJ's duty to fully examine and develop the record.  Without doubt, the claimant bears the burden of proof as to the existence and severity of the limitations caused by his impairments. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

6

Nevertheless, an ALJ has certain responsibilities to develop the medical record, too.  20 C.F.R. § 404.1545(a)(3) states that "we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get the medical records from your medical sources."  There is no evidence in the administrative record that this responsibility was met in this case.

The only opinion evidence in the file consists of four reports prepared by two state agency record reviewing physicians, P. Saranga, M.D., and Carlos Hernandez, M.D., and by two record reviewing Ph.Ds, Jane Brake and Dan Vandivier, which were completed in October 2010 (initial determination) and December 2010 (on reconsideration). The psychologists did not recommend that any mental health related limitations be imposed on Mr. Holloway's ability to work, but the medical doctors recommended several exertional and non-exertional limitations. The ALJ, as noted above, did not request or obtain any further opinion evidence or indicate in any way whether he considered the opinions of the state agency consultants.

During the sequential evaluation process, the ALJ must determine which of the claimant's impairments are severe, and the extent to which all of his impairments (including, the combined effect of both severe and non-severe impairments) translate into work-related capabilities or limitations. This is the residual functional capacity finding against which the claimant's ability to perform his or her past relevant work, or any other job existing in significant numbers locally or nationally, is evaluated.

Although courts differ regarding the limits of the extent of the ALJ's obligations to obtain opinion testimony given the claimant's ultimate burden of proof, it is undisputed that an ALJ's findings must have the support of substantial evidence in the administrative record.  *See Jordan,* 548 F.3d at 422.  The regulations clearly state that an ALJ *must* consider all evidence in the

record,[25] although ALJs are not bound by the determinations of consultative examiners, they "*must* consider findings and other opinions of State agency medical and psychological consultants … as opinion evidence, except for the ultimate determination about whether [a claimant] is disabled"[26] and "*must* explain in the decision the weight given to the opinions of a State agency medical or psychological consultant."[27]

 As the Sixth Circuit has frequently observed in unpublished opinions, which are nevertheless consistent on the following particular point of law, that "[b]y independently reviewing and interpreting the laboratory reports the administrative law judge impermissibly substitute[s] his own judgment for that of a physician; an administrative law judge is not free to set his own expertise against that of a physician who presents competent evidence." *McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 193 (6th Cir. 2003)(citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir.1985)).  This is so, because, as is often noted in opinions within the Western District of Kentucky, "Common sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sec'y of Health and Human Servs.*, 914 F.2d 117, 118 (7th Cir., 1990)(cited with approval in *McGuire v. Astrue*, 2011 WL 1399846 (W.D. Ky. 2011)( report and recommendation adopted, 2011 WL 1399638 (W.D. Ky. 2011)).  The administrative law judge is simply not qualified to interpret raw clinical data and diagnoses in functional terms. *Cf. Higgs v. Sec'y of Health and Human Servs*, 880 F.2d 860, 863 (6th Cir., 1988)( "[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition.")(cited with approval in *Burke v. Astrue*, 2011 WL 7404388 (W.D. Ky. 2011) report and recommendation adopted, 2012 WL 566790 (W.D. Ky. 2012)).

---

[25] 20 C.F.R. § 404.1520(a)(3).
[26] 20 C.F.R. § 404.1527(f)(2)(i)(emphasis added).
[27] 20 C.F.R. § 404.1527(f)(2)(ii)(emphasis added).

In this case, the ALJ determined Mr. Holloway's functional capacity solely on his own review of the medical records, Mr. Holloway's statements in his application, and Mr. Holloway's testimony.[28]   The ALJ did not, in any part of his decision, refer to the opinions contained within any of the consultative examinations performed at the state agency's request, and did not avail himself of his regulatory ability to request an opinion from Mr. Holloway's treating physician, or an updated consultative or physical examination.[29]

After reviewing the treatment records in the file, the magistrate judge concludes that this is not one of the rare cases in which the medical evidence is so clear that an ALJ can use common sense to render a judgment about functional capacity.[30] The state agency twice deemed Mr. Holloway's lumbar spine condition to be severe[31] based on its review of the available medical evidence, which included MRI reports establishing medically significant impairment of Mr. Holloway's spine.[32]  These and other treatment notes regarding Mr. Holloway's carpal tunnel syndrome[33] and his bi-polar disorder[34] are objective medical raw data that necessitate the opinions of a medical doctor or qualified mental health professional able to help translate that data into functional limitations.

Under these circumstances, a remand is necessary for the ALJ to explain which of the existing medical and psychological opinions he relied upon or rejected when evaluating Mr. Holloway's claim, and why, or to obtain and consider more recent opinions from either Mr. Holloway's treating physician or agency consultants.

---

[28] *See generally* Admin. R. at 15-18.
[29] Admin. R. at 22-23; *but see* Admin. R. at 32 (in which Mr. Holloway states that Dr. Berry is a bowling buddy of his).
[30] Admin. R. at 213-365; *but see* Admin. R. at 37-38 (in which Mr. Holloway testified about his activities and clearly annoyed the ALJ).
[31] Admin. R. at 56, 66, 77.
[32] *See, e.g.,* Admin. R. at 7, 213, 298.
[33] *See, e.g.,* Admin. R. at 232, 281, 283; *contra* Admin. R. at 279.
[34] *See, e.g.,* Admin. R. at 232, 272, 280-81.

9

**B. Additional Allegations of Error**

Because remand is necessary with respect to the ALJ's handling and evaluation of the medical evidence in the record, the court need not address his alleged failure to deem Mr. Holloway's testimony regarding his functional limitations fully credible. That being said, the magistrate judge notes that the court must accord great weight and deference to an ALJ's credibility finding, but that deference is required only when an ALJ's evaluation of credibility is supported by substantial evidence in the record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).   Accordingly, to the extent that the ALJ's decision to discount Mr. Holloway's testimony concerning the severity of his functional limitations was based on the ALJ's interpretation of any medical evidence requiring the interpretation of an appropriate consultant, it would warrant reevaluation on remand.   *See* 20 CFR §§ 404.1529(a).

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the final decision of the Commissioner is not supported by substantial evidence and does not comport with applicable law. The undersigned recommends that pursuant to 42 U.S.C. § 405(g), this case be remanded to the Commissioner for further proceedings.


    DATE:

cc:  counsel of record

### NOTICE

Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived.  28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).